IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RACHED K. MERHEB, individually,
STAR LIMO, LLC, d/b/a STAR LIMO and
VANGO, LLC d/b/a 505 VANGO,

    Plaintiffs,

v.                                                    Case No. 1:21-cv-01158-MIS-LF

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER is before the Court on Defendant Philadelphia Indemnity Insurance Company ("PIIC")'s Motion for Judgment on Partial Findings, ECF No. 97. The Court held a bench trial on March 24, 2025. At the close of Plaintiffs' case, Defendant filed and made an oral motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52. *See* ECF No. 97. Following argument, the Court made an *ore tenus* ruling granting the motion. *See* ECF No. 99. At the Court's direction, Defendant filed Proposed Findings of Fact and Conclusions of Law, ECF No. 101, to which Plaintiffs responded, ECF No. 102.

Having heard witness testimony, reviewed the Parties' exhibits accepted into evidence at trial, heard Plaintiffs' and Defendant's respective arguments, reviewed the trial pleadings and relevant law, and being otherwise fully advised in the premises, the Court makes the following findings of fact and conclusions of law in accordance with its determinations at trial.

## FINDINGS OF FACT

1. Plaintiff Rached K. Merheb sought and obtained a PIIC Commercial Auto Policy ("Auto Policy") on behalf of Star Limo, with Merheb and Star Limo as named insureds, with effective dates of April 10, 2014 to April 10, 2015. Pretrial Order, Stipulated Factual Contentions ( "SFC") ¶ 5, ECF No. 96; Joint Ex. 1 at 4, 26.

2. The Auto Policy provided $1 million in liability coverage for Star Limo. SFC ¶ 6; Joint Ex. 1 at 27.

3. The Auto Policy listed only the City of Albuquerque Director of Aviation with the Albuquerque International Sunport as an additional insured person or organization. *See* Joint Ex. 1 at 9, 120; Trial Tr. 42:1-8[1].

4. Merheb and Star Limo were also named insureds on a PIIC Commercial Umbrella Liability Insurance Policy ("Umbrella Policy") effective from April 10, 2014 through April 10, 2015. *See* Joint Ex 2. at 5, 52-53.

5. The Umbrella Policy had a liability coverage limit of $4 million. SFC ¶ 7; Joint Ex. 2 at 53.

6. The Umbrella Policy included an exception indicating that the Umbrella Policy does not apply to "any liability, damage, loss, cost or expense arising out of the ownership, operation, maintenance, use, 'loading or unloading' or entrustment to others of an 'auto.'" *See* Joint Ex. 2 at 16, 43.

---

[1] References to the Trial transcript are to the transcript of proceedings for the Bench Trial from March 24, 2025 prepared by Vanessa I. Alyce Chavez and cited as Trial Tr. Page:Line(s).

7. Merheb knew there were different insurance requirements for renting vehicles to third parties as opposed to a limousine business for hire with the operation of a driver from the company. Trial Tr. 56:11-17.

8. Merheb did not talk to insurance companies, including PIIC, directly when applying for insurance. Merheb communicated through his agent. Trial Tr. 57:3-6.

9. PIIC understood that 505 Vango and Star Limo were two separate businesses—one rented vans and one rented limousines—and was insuring the Star Limo business. SFC ¶ 4.

10. Vango was a sole and separate entity from Star Limo, LLC, and a sole and separate entity from Rached Merheb d/b/a Star Limo. Trial Tr. 28:2-5. Vango rented vehicles to the public and was a single member LLC. *Id*.

11. Vango, LLC ceased doing business in 2012. Trial Tr. 55:23-56:1.

12. On September 19, 2014, Samia Ahmad rented a van from 505 Vango, a company owned and operated by Plaintiff Merheb. SFC ¶ 1; Trial Tr. 27:14, 27:23-24.

13. The rental agreement contains the 505 Vango letterhead. SFC ¶ 2; Trial Tr. 27:18-19.

14. Vango signed the contract that rented the vehicle. Trial Tr. 28:1.

15. Star Limo is not referenced anywhere on the rental paperwork. SFC ¶ 3.

16. On the same day that the van was rented, September 19, 2014, Ms. Ahmad and a group of friends and their daughters were involved in a single car automobile accident in the van she rented from 505 Vango. SFC ¶ 8.

17. Ms. Ahmad claimed that while driving on I-25 to El Paso, the tread on the rear tires separated, which caused her to lose control of the van. The van tipped sideways and rolled several times, injuring all 10 passengers. SFC ¶ 9; Trial Tr. 25:4-10

18. Merheb filed an automobile loss claim with PIIC on September 22, 2014. Joint Ex. 4; Trial Tr. 26:9-11.

19. PIIC issued Mr. Merheb a Loss Acknowledgment letter the very next day. Joint Ex. 5.

20. On September 25, 2014, three (3) days after the claim was submitted, PIIC received an acknowledgement of assignment for investigation of Mr. Merheb's claim. SFC ¶ 13; Joint Ex. 7.

21. The reports of investigation spanned from October 7, 2014 through March 24, 2015. Joint Ex. 11.

22. On September 25, 2014, Merheb retained Paul Yarborough at Butt, Thornton & Baehr PC ("BTB"), six (6) days after the occurrence of the accident and three (3) days after having notified PIIC of the accident, as his counsel to represent him in connection with any claims that might be asserted. SFC ¶ 11; Joint Ex. 8; Trial Tr. 26:22-23, 27:10-14, 29:3-5.

23. PIIC assigned BTB as counsel to continue to represent the insured as demonstrated in the prelitigation assignment letter dated December 17, 2014. SFC ¶ 14; Joint Ex. 10; Trial Tr. 29:10.

24. From that point forward and until other counsel was appointed by PIIC, the BTB law firm handled all communications with counsel representing the injured parties in the accident. SFC ¶ 12.

25. PIIC later assigned Chapman & Charlebois, PC to represent the insured. Joint Ex. 14; Trial Tr. 29:21-22.

26. No lawsuit was filed against Plaintiffs by the passengers until September 8, 2017, almost three (3) years after the accident. SFC ¶ 10; Joint Exs. 19-21; Trial Tr. 32:17-19.

27. On September 8, 2017, the three families involved in the accident filed three separate lawsuits against Merheb and his companies. SFC ¶ 15; Joint Exs. 19-21; Trial Tr. 32:19.

28. PIIC issued another loss acknowledgment letter on September 22, 2017 after the lawsuits were filed. Joint Ex. 22.

29. PIIC assigned the defense of Vango, LLC to Civerolo law in November 2017 after the lawsuits had been filed. Trial Tr. 32:23-33:6, 54:3-8.

30. Merheb filed third-party complaints against Michelin and Bob Turner Ford Country, among others, alleging that the accident was caused by a defective tire. SFC ¶ 16.

31. In 2018, all three cases were consolidated in the Second Judicial District Court. SFC ¶ 17.

32. PIIC defended Merheb and his companies in all three (3) of the cases that were filed against them. SFC ¶ 18.

33. In April of 2019, Plaintiffs entered into three separate settlement agreements wherein PIIC paid the injured parties settlement amounts in excess of policy limits in exchange for full release of claims against Mr. Merheb, Star Limo, and Vango. SFC ¶ 19; Joint Exs. 23-25; Trial Tr. 34:13-15.

34. The total amount paid for those settlements by PIIC, collectively, was approximately $1.4 million. SFC ¶ 20.

35. Plaintiffs filed the instant Complaint against PIIC nearly three (3) years after it paid the settlements in the underlying lawsuits. SFC ¶ 21; Notice of Removal, ECF No. 1.

36. Plaintiffs requested dismissal of the breach of contract claim after presentation of the Defendant's Motion for Judgment on the Partial Findings. Trial Tr. 76:15-22.

37. Plaintiffs did not present any evidence that showed Vango was an additional insured. Joint Ex. 1 at 9, 120; Trial Tr. 42:1-8, 77:20-23.

38. Plaintiffs' claim for bad faith was premised on an alleged refusal to pay $7,000.00 to Shannon Robinson for representation necessary due to PIIC's refusal to acknowledge an obligation to represent Vango, LLC. Trial Tr. 77:4-11.

39. Plaintiffs also alleged that a separate declaratory action filed by PIIC relating to coverage was in bad faith. Trial Tr. 80:24-81:3, 82:8-16.

40. Plaintiffs presented no argument or competent evidence at trial in support of their claims for unfair insurance claims practices. Trial Tr. 82:17-83:2.

41. Plaintiffs presented no expert testimony at trial in support of their claims for breach of contract, insurance bad faith or violations of the Unfair Insurance Practices Act.

## CONCLUSIONS OF LAW

*Breach of Contract*

1. Plaintiffs failed to prove by a preponderance of the evidence that PIIC breached its contract with Plaintiffs "by failing to perform a contractual obligation when that performance is called for . . . or announcing ahead of time that [it] will not perform a contractual obligation when the time for that performance comes due." NMRA, Civ. UJI 13-822.

2. An insurance policy is a contract between the insurer and the insured. *Modisette v. Found. Rsrv. Ins. Co.*, 427 P.2d 21, 25 (N.M. 1967).

3. The duty of the insurer is governed by the terms of the contract. *See* NMRA, Civ. UJI 13-1701; *Dove v. State Farm. Fire & Cas. Co.*, 399 P.3d 400, 404 (N.M. Ct. App. 2017) ("The obligation of an insurer is a matter of contract law and must be determined by the terms of the insurance policy.").

4. Plaintiffs provided no evidence that PIIC failed to perform a contractual obligation to Merheb.

5. Plaintiffs provided no evidence that PIIC failed to perform a contractual obligation to Vango.

6. Plaintiffs provided no evidence that Vango was an insured of PIIC.

7. Plaintiffs provided no evidence that PIIC failed to perform a contractual obligation to Star Limo.

8. Plaintiffs voluntarily dismissed their claim for breach of contract at trial.

*Bad Faith*

9. "[U]nder the contract of insurance, there is an implied covenant of fair dealing which creates an obligation between the parties to act in good faith. New Mexico recognizes this duty of good faith between insurer and insured." *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 690 P.2d 1022, 1024 (N.M. 1984) (internal citation omitted). A contract must exist in order to establish bad faith. *See Chavez v. Chenoweth*, 553 P.2d 703, 709 (N.M. 1976). "Because the duty to use good faith derives from the contract of insurance, no common-law cause of action exists in favor of a third party." NMRA, Civ. UJI 13-701, comm. cmt.

10. "An insurer that acts honestly and fairly in not settling a claim, after conducting a diligent, competent, and reasonable investigation of the claim, is not liable for bad faith." NMRA, Civ. UJI 13-1704.

11. An insurance company may justifiably take reasonable time and measures necessary to establish which party is entitled to the proceeds of a claim. *Am. Nat'l Prop. & Cas. Co. v. Cleveland*, 293 P.2d 954, 958 (N.M. 2012).

12. It is generally not bad faith for an insurer to seek a judicial declaration of the rights of the parties under an insurance contract. *Cf. Glacier Constr. Co. v. Travelers Prop. Cas. Co. of Am.*, 569 F. App'x 582, 589 (10th Cir. 2014) (quoting *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)). "An insurer faced with uncertainty about whether it has a duty to defend has the option to seek a judicial determination of the question[.]" NMRA, Civ. UJI 13-1703A, comm. cmt.

13. "An insurer 'does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy.'" *Progressive Cas. Ins. Co. v. Vigil*, 345 P.3d 1096, 1099 (NM. Ct. App. 2015) (quoting prior version of UJI 13-1702 NMRA), *rev'd and remanded on other grounds*, 413 P.3d 850 (N.M. 2018).

14. "[A]n insurer has a right to refuse a claim without exposure to a bad faith claim if it has reasonable grounds to deny coverage." *Cleveland*, 293 P.3d at 958.

15. PIIC's disagreement with Plaintiffs' assessment of Vango being an insured entity, and later, the value and causation of their claimed damages, does not establish bad faith.

16. Plaintiffs have failed to prove by a preponderance of the evidence that PIIC acted in bad faith as to any of the Plaintiffs.

*Unfair Claims Practices Act*

17.  Plaintiffs have not established violations of the New Mexico Unfair Claims Practices Act, N.M. Stat. Ann. § 59A-16-20, of the Trade Practices and Frauds Article of the Insurance Code, N.M. Stat. Ann. §§ 59A-16-1 to -30.

18.  While the Unfair Claims Practices Act prohibits certain "unfair and deceptive practices" with respect to insurance claims, *see* N.M. Stat. Ann. § 59A-16-20, it "does not 'require insurers to settle cases they reasonably believe to be without merit or overvalued." *Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1148 (D.N.M. 2010) (quoting *Hovet v. Allstate Ins. Co.*, 89 P.3d 69, 78 (N.M. 2004)).

19.  "Any insurer that objectively exercises good faith and fairly attempts to settle its cases on a reasonable basis and in a timely manner need not fear liability." *Hovet*, 89 P.3d at 78.

20.  For any of Plaintiffs' claims under Section 59A-16-20 to be actionable, the alleged acts must be "knowingly committed or performed with such frequency as to indicate a *general business practice*." *See* N.M. Stat. Ann. § 59A-16-20 (emphasis added).

21.  Plaintiffs have presented no evidence that Defendant engaged in conduct that violated the Unfair Claims Practices Act as a "general business practice," and all of Plaintiffs' claims under Section 59A-16-20 fail.

22.  Plaintiffs have failed to prove by a preponderance of the evidence that PIIC violated the Unfair Claims Practices Act.

*Causation and Damages*

23.  "[N]ew Mexico requires expert testimony to show causation in . . . cases . . . where causation cannot be determined by common knowledge that an average person ordinarily

possesses." *Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1060–61 (D.N.M. 2016).

24. To the extent a claim arises from the breach of an insurance contract, recoverable damages are limited to those "contemplated by the parties at the time of making the contract." *State Farm Gen. Ins. Co. v. Clifton*, 527 P.2d 798, 799 (N.M. 1974).

25. "Damages based on a 'rough estimate' by a witness are insufficient to support a judgment." NMRA, Civ. UJI 13-843, comm. cmt.

26. Damages must be "of the kind and character susceptible of proof, and the amount of damages allowed must be subject to reasonable ascertainment." *Louis Lyster, Gen. Contractor, Inc. v. Town of Las Vegas*, 405 P.2d 665, 667 (N.M. 1965) (quoting *Nichols v. Anderson*, 92 P.2d 781 (N.M. 1939)).

27. Plaintiffs did not present any expert testimony on the causation of any damages.

28. Plaintiffs have failed to establish by a preponderance of the evidence that they are entitled to any damages as a matter of law.

29. Plaintiffs have failed to establish proximate cause or causation of damages by a preponderance of the evidence.

## **CONCLUSION**

Based on the foregoing, it is ordered that the Clerk of Court enter judgment in favor of Defendant as to each of Plaintiffs' claims.

*/s/ Margaret Strickland*
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE